IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LEO MORITZ, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | **CASE NO.** |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| RICHARD KINZEL, RICHARD FERREIRA, MICHAEL KWIATKOWSKI, STEVEN TISHMAN, DAVID PARADEAU, DARREL ANDERSON, C. THOMAS HARVIE, CEDAR FAIR, L.P., CEDAR FAIR MANAGEMENT, INC., | ) ) ) ) ) ) ) | **FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1.      This class action is brought on behalf of the unitholders of Cedar Fair, L.P., ("Cedar Fair" or the "Company") against Cedar Fair, Cedar Fair Management, Inc. ("CFMI", the Company's general partner) and CFMI's Board of Directors (the "Board" or the "Individual Defendants") alleging violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder by the United States Securities and Exchange Commission ("SEC").

2.      Specifically, the Individual Defendants have attempted to solicit unitholder proxies in support of the Company's proposed sale to Siddur Holdings, Ltd. and Siddur Merger

Sub, LLC, affiliates of Apollo Global Management (collectively "Apollo") (the "Proposed Transaction") with the issuance of a Schedule 14A Proxy Statement (the "Proxy") on January 8, 2010 that contains materially misleading information and omissions of material fact.

3.      Accordingly, this action seeks to enjoin the Proposed Transaction and require Defendants to disseminate an accurate and complete Proxy that fully and fairly informs unitholders all material information in a non-misleading manner.

## JURISDICTION AND VENNUE

4.      The claims asserted herein arise under Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)].  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] and 28 U.S.C. § 1331.

5.      Venue is proper in this District because many of the acts and practices complained of herein occurred in substantial part in this District, including the dissemination of the materially misleading statements and omissions alleged herein.  In addition, Cedar Fair maintains its principal executive offices in Ohio.

## PARTIES

6.      Plaintiff is, and has been at all relevant times, the owner of limited partnership units of Cedar Fair.

7.      Cedar Fair is a publicly traded Delaware limited partnership formed in 1987 and managed by CFMI.  Units representing limited partner interests of Cedar Fair are listed for trading on The New York Stock Exchange under the symbol "FUN," and as of December 21, 2009, there were approximately 55.21 million units outstanding. Cedar Fair maintains its principal offices at One Cedar Point Drive, Sandusky, Ohio, 44870, and owns and operates amusement and water parks in the United States and Canada.

8.      Cedar Fair Management, Inc. ("CFMI") is an Ohio corporation whose shares are held by an Ohio trust and it operates as a general partner of the Company.  The Board of Directors of CFMI is comprised of seven directors each of whom approved the Proposed Transaction.

9.      Defendant Richard Kinzel ("Kinzel") has been President and Chief Executive Officer of the CFMI since 1986 and a member of the Board of Directors since 1986, serving as chairman of the Board since 2003.

10.      Defendant Richard Ferreira ("Ferreira") has served as director of CFMI since 1997.

11.      Defendant Michael Kwiatkowski ("Kwiatkowski") has been a director of CFMI since 1999.

12.      Defendant Steven Tishman ("Tishman") has served as director of CFMI since 2003.

13.      Defendant David Paradeau ("Paradeau") has served as director of CFMI since 2003.

14.      Defendant Darrel Anderson ("Anderson") has served as director of CFMI since 2003.

15.       Defendant C. Thomas Harvie ("Harvie") has served as director of CFMI since 2003.

16.      Defendants referenced in ¶¶ 9 through 15 are collectively referred to as Individual Defendants and/or the CFMI Board. The Individual Defendants as officers and/or directors of CFMI, Cedar Fair's general partner, have a fiduciary relationship with Plaintiff and other public

unitholders of Cedar Fair and owe them the highest obligations of good faith, fair dealing, loyalty and due care.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action on its own behalf and as a class action on behalf of all owners of Cedar Fair units representing limited partner interests in Cedar Fair and their successors in interest, except Defendants and their affiliates (the "Class").

18.     This action is properly maintainable as a class action for the following reasons:

(a)     the Class is so numerous that joinder of all members is impracticable.  As of December 21, 2009, Cedar Fair has approximately 55.21 million units outstanding.

(b)     questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Have the Individual Defendants misrepresented and omitted material facts in violation of Section 14(a) of the Exchange Act; and

(ii)     Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for Defendants.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

19.     In a press release dated December 16, 2009, the Company announced that it had entered into a merger agreement with Apollo, stating:

> SANDUSKY, OHIO, December 16, 2009 -- Cedar Fair, L.P. (NYSE: FUN), a leader in regional amusement parks, water parks and active entertainment, announced today that it has entered into a definitive merger agreement to be acquired by an affiliate of Apollo Global Management, a leading global alternative asset manager.
>
> Under the terms of the agreement, Cedar Fair unitholders will receive $11.50 in cash for each Cedar Fair limited partnership unit that they hold. . .The transaction is valued at approximately $2.4 billion, including the refinancing of the Company's outstanding indebtedness. Affiliates of J.P. Morgan, B of A Merrill Lynch, Barclays Capital Inc., UBS Investment Bank and KeyBanc Capital Markets have provided an aggregate $1.95 billion financing commitment in support of the transaction.
>
> The board of directors of Cedar Fair has unanimously approved the merger agreement and has resolved to recommend that Cedar Fair limited partnership unitholders adopt the agreement.

20.     On January 8, 2010, the Company filed the Proxy with the SEC in connection with the Proposed Transaction.

21.     The Proxy fails to provide the Company's unitholders with material information and/or provides them with materially misleading information thereby rendering the unitholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction.

22.     For example, the Proxy completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Guggenheim Securities, LLC ("Guggenheim"), one of the Company's financial advisor, so that unitholders can properly assess

the credibility of the various analyses performed by Guggenheim  and relied upon by the Board in recommending the Proposed Transaction.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

> (i)    More detail in the Company's projections, including depreciation and changes in working capital for years 2009-2013, all of which are necessary components in the calculation of free cash flows used in the *Discounted Cash Flow Analysis*.

> (ii)   The criteria utilized by Guggenheim to select the companies used in its *Peer Group Trading Analysis.*

> (iii)  The multiples observed for each company in the *Peer Group Trading Analysis.*

> (iv)   The criteria used to select the reference ranges applied to Cedar Fair's corresponding financial data for each multiple in the *Peer Group Trading Analysis.*

> (v)    The implied per share range for Cedar Fair calculated for each of the four multiples (Enterprise Value/2009E EBITDA, Enterprise Value/2010E EBITDA, Enterprise Value/2009E EBIT, Enterprise Value/2010E EBIT) in the *Peer Group Trading Analysis.*

> (vi)   The transaction values for each of the transactions in the *Precedent Merger and Acquisition Transaction Analysis.*

> (vii)  The criteria used to select an exit LTM EBITDA multiple of 6.5x to 8.0x in the *Leveraged Buyout Analysis*.

23.    The Proxy also completely fails to disclose the underlying methodologies, projections, key inputs and multiples relied upon and observed by Rothschild, Inc. ("Rothschild"), one of the Company's financial advisor, so that unitholders can properly assess the credibility of the various analyses performed by Rothschild and relied upon by the Board in recommending the Proposed Transaction.  In particular, the Proxy is deficient and should provide, *inter alia*, the following:

(i)     The criteria utilized by Rothschild to determine the two transactions used in the *Selected Precedent Transactions Analysis* were "comparable" to Cedar Fair.

(ii)     The transaction values for each of the transactions in the *Selected Precedent Transactions Analysis.*

(iii)     The Company's 2009E EBITDA used in the *Selected Precedent Transactions Analysis,* and the amount of the adjustments made to it.

(iv)     The criteria used to select perpetuity growth rates of 1.50% to 2.50% and EBITDA multiples of 6.0x to 7.0x used in the *Discounted Cash Flow Analysis*.

(v)     The amount of the "projected term debt and derivative liability balances at December 31, 2009,…the Company's average net revolver balance through the year based on information provided by management, the Special LP Interests, the present value of certain tax assets and liabilities under the management projections, and the value of certain non-operating real estate assets based on information provided by management" used in the *Discounted Cash Flow Analysis.*

(vi)     The criteria utilized by Rothschild to select the companies it deemed "comparable" to the Company used in its *Selected Public Company Analysis.*

(vii)     The multiples observed for each company (or at least the high/mean/low range) in the *Selected Public Company Analysis.*

24.     The Proxy also fails to describe material information concerning the reasons the company did not pursue an auction process prior to the execution of the merger agreement.  For example, the Proxy:

(i)     States that on October 15, 2009, the Board discussed "whether it was the right time to explore a sale of, or investment in, the Company, generally, and if so, what process would lead to the best result for the Company's unitholders," but it fails to disclose what the Board determined as a result of such discussion.

(ii)     States that on October 23, 2009, the Board reviewed other parties that might be interested in an acquisition of, or significant investment in, the Company and determined that "such parties

were unlikely to pursue such a transaction," but fails to disclose how many parties were discussed and the reasons the Board believe such parties were unlikely to pursue a transaction with the Company.

    (iii)    States that on October 26, 2009, the Board discussed "the pros and cons of attempting to conduct a full auction before entering into an agreement with Apollo," but fails to disclose the pros and cons that were discussed.

    (iv)    States that on October 29, 2009, the Board discussed whether their advisors "believed that an interested party would approach the Company during a go-shop in light of the executed merger agreement with Apollo and the likelihood that such party would have to pay a termination fee," but fails to disclose what the advisors' belief was with respect to this.

It is absolutely necessary for unitholders to receive a Proxy that provides all material disclosures related to the sales process, or lack thereof, in order for unitholders to be able to cast a fully informed decision regarding the Proposed Transaction.

25.    The Proxy further neglects to provide unitholders with sufficient information to evaluate the pros and cons associated with the other strategic alternatives, other than the sale of the Company, considered by the Board -- information which is vital to unitholders in deciding how to vote regarding the Proposed Transaction.  For example, the Proxy:

    (i)    States that as part of its reasons for approving the merger, the Board considered the "Company's recent inability to reduce indebtedness through the sale of assets or equity on favorable terms," but fails to disclose specifically what steps the Board undertook to reduce its indebtedness, the reasons it determined the terms weren't favorable, and the amount of indebtedness the Company needed to reduce.

    (ii)    States that on October 23, 2009, the Board discussed the pros and cons of several potential strategic alternatives, including selling a significant equity stake in the Company, refinancing alternatives with respect to the Company's outstanding indebtedness, conversion of the Company from a limited partnership to a corporation and acquisition or merger transactions by the

Company, but fails to disclose the pros, cons and feasibility of each such alternative.

(iii)   Fails to disclose the alternatives to a transaction with Apollo that might be available to the Company that were discussed by the Board on October 27, 2009 and on October 30/31st.

(iv)   States that on November 13, 2009, the Board discussed "alternatives to the revised Apollo proposal, including a conversion from a limited partnership to a corporation, the sale of certain assets and a financing transaction," but fails to disclose the results of such discussion with respect to pursuing such alternatives.

26.     In addition, the Proxy states that on November 22, 2009, the Board determined that in light of the fact that the Company's management team might be conflicted, it would create a transaction committee consisting of Defendants Andersen, Kwiatwoski, and Harvie. The Proxy fails to disclose the criteria for selecting these three directors as well as the reasons the Board waited until well into the negotiation process with Apollo before determining to create such a committee.

27.     Lastly, on January 26, 2010, the Company filed an additional proxy statement on a Form DEFA14A with the SEC discussing the results of the go-shop process. This filing failed to provide material information concerning the go-shop process, including the criteria for selecting the 32 parties that were contacted, and the reasons the six parties that entered into non-disclosure agreements were not interested in making an acquisition proposal for the Company.

28.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company unitholders will continue to suffer absent judicial intervention.

**COUNT I**
**Violations of Section 14(a) of the Exchange Act**
**and Rule 14a-9 Promulgated Thereunder**

29.     Plaintiff repeats all previous allegations as if set forth in full herein.

30.     Defendants have issued the Proxy with the intention of soliciting unitholder support of the Proposed Transaction.

31.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

32.     Specifically, the Proxy violates the Section 14(a) and Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

33.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## PRAYER

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and their counsel as Class counsel;

(B)     declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C)     enjoining, preliminarily and permanently, the Proposed Transaction until Defendants remedy the Proxy's material deficiencies and otherwise render the statements contained therein complete and non-misleading;

(D)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(E)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Eduard Korsinsky*
LEVI & KORSINSKY, LLP
Eduard Korsinsky, Esq.
ek@zlk.com
Juan E. Monteverde, Esq.
jmonteverde@zlk.com
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171


*s/ Bruce B. Elfvin*
Bruce B. Elfvin (Oh. Sup. Ct. #0015694)
bbe@elfvinbesser.com
Barbara Kaye Besser (Oh. Sup. Ct. #0017624)
bkb@elfvinbesser.com
Stuart Torch (Oh. Sup. Ct.#0079667)
stuart.torch@elfvinbsser.com

ELFVIN ✧ BESSER
4070 Mayfield Road
Cleveland, Ohio  44121-3031
216.382.2500 (voice)
216.381.0250 (facsimile)

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims that may be so tried.

*s/ Bruce B. Elfvin*
Bruce B. Elfvin
One of the attorneys for Plaintiff